The Trotting Horse Club of America, Inc. v. Commissioner.
Trotting Horse Club of America, Inc. v. Commissioner
Docket No. 3728.
United States Tax Court
1945 Tax Ct. Memo LEXIS 176; 4 T.C.M. (CCH) 572; T.C.M. (RIA) 45190; June 4, 1945
*176 Frank E. Barnett, Esq., 120 Broadway, New York 5, N. Y., and Charles H. McAuliffe, Esq., for the petitioner. Bernard J. Long, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: The respondent has determined deficiencies in petitioner's income and declared value excess profits tax for 1939 and 1940 as follows: Declared
Value Excess
Year
Income Tax
Profits Tax
1939
$278.63
$ 48.28
1940
907.04
626.88
The questions presented are (1) whether petitioner is entitled to deduct from gross income in its income tax return for 1939 $16,775.72 as a bad debt in consequence of advances made by it to American Trotting Register Association, Inc., and (2) whether the stock of American Trotting Register Association, Inc., owned by the petitioner became worthless in 1939. The facts are shown by the pleadings, a signed stipulation of facts incorporated herein by reference, and the testimony of two witnesses. Findings of Fact Petitioner is a corporation organized August 12, 1927, under the laws of the State of New York, with offices at 9 James St., Middletown, N. Y. The income and declared value excess profits *177 tax returns of petitioner for the years 1939 and 1940 were filed with the collector of internal revenue for the fourteenth district of New York. The certificate of incorporation of the petitioner states in part as follows: "SECOND: The particular objects and purposes for which the corporation is to be formed are as follows: "(a) To promote interest in and uniform management of light harness horse racing. "(b) To encourage the breeding of horses for light harness horse racing. * * * * *
"(e) Generally, to do any and all things, which may be necessary or proper in connection with its objects and purposes, which may not be contrary to law, provided however, nothing herein contained shall be construed as giving the corporation the right to conduct running or steeplechase meetings." The authorized capital stock of the petitioner corporation consists of 2,200 shares of the par value of $25 each. E. R. Harriman subscribed to 1,997 shares of the total authorized. In 1927 E. R. Harriman acquired, at a cost of $30,325, 457 shares of the stock of American Trotting Register Association, an Illinois corporation organized in 1891, which corporation for many years had kept and *178 maintained breeding and racing records of the American Standard Bred Horse. On or about August 23, 1928, American Trotting Register Association, Inc., was organized under the laws of the State of New York, with authorized capital stock of 1,000 no par value shares, one qualifying share of its capital stock being issued to E. R. Harriman, and one to each of his two nominees. On the same date, E. R. Harriman sold to petitioner the said 457 shares of the capital stock of American Trotting Register Association of Illinois for $30,325, and transferred to the petitioner the three shares of the capital stock of American Trotting Register Association, Inc., of New York, originally issued to him. Thereafter, in 1928, the assets and liabilities of American Trotting Register Association of Illinois were transferred and assumed by American Trotting Register Association, Inc., of New York, in exchange for 960 shares of the capital stock of the latter corporation. The stock was thereupon held for distribution, share for share, to stockholders of American Trotting Register Association of Illinois. Of the 960 shares of stock so held for distribution, only 680 shares were claimed, and petitioner *179 received 457 shares and thereafter acquired 45 additional shares at a cost of $446. The petitioner then owned a total of 505 shares of the total 680 shares issued and outstanding which cost it $30,771. At all times material to this proceeding, all the officers of the American Trotting Register Association, Inc., were also officers of the petitioner corporation. The petitioner began, at the time of its organization in 1927, to attempt to effect a consolidation of its activities with those of other trotting associations. Efforts to effect such a merger were unsuccessful, and active negotiations along this line were dropped in 1931. At the time the petitioner acquired control of the American Trotting Register Association, Inc., there were then in existence the American Trotting Association with headquarters at Chicago, Ill., and the National Trotting Association with headquarters at Hartford, Conn. These associations did not require a horse to be registered to race. The American Trotting Association had jurisdiction of trotting horse races in the middle states and in the west, and the National Trotting Association had jurisdiction in the eastern states. The petitioner tried to *180 bring about compulsory registration, but it was concluded in about 1931 that it was impossible to bring this about so long as the then secretaries of these two associations lived. Petitioner had net losses in each year of its operations from 1927 through 1938, except 1928, in which year it had net income of $764.29. The petitioner's surplus account for the years 1928 through 1940 reflects a deficit at the end of each year, as follows: Year
Amount
1928
$ 454.97
1929
2,531.10
1930
5,690.11
1931
11,133.96
1932
14,405.84
1933
16,554.55
1934
27,807.94
1935
36,492.35
1936
44,495.92
1937
47,576.72
1938
52,977.02
1939
100,421.25
1940
93,797.18
The American Trotting Register Association, Inc., sustained losses in each year of its operation from 1928 through 1938. The liabilities of the American Trotting Register Association, Inc., exceeded its assets from the year 1930 through the year 1938, and its surplus account showed a deficit at the end of each year of its operation, as follows: Year
Amount
1928
$ 2,167.30
1929
19,812.77
1930
31,206.21
1931
41,097.84
1932
49,217.66
1933
60,042.13
1934
68,100.86
1935
70,774.12
1936
77,770.54
1937
82,116.23
1938
89,245.87
*181 In order for petitioner to carry on its activities, funds were advanced to it by its stockholders and men interested in advancing the sport of trotting horse racing. There was very little likelihood that the petitioner would ever be able to have funds sufficient to repay the advances made to it, and its only obligation was to make repayment at will. The petitioner considered it to be desirable, in the interest of the trotting horse sport, to support the activities of the American Trotting Register Association, Inc., and, in order to do so, advanced funds to and paid expenses of said Association during each year of its existence and carried these advances on its books in an account entitled "Accounts Receivable - American Trotting Register Assn., Inc." The source of the advances made by petitioner to American Trotting Register Association, Inc., was from the funds advanced to it as set forth above. The petitioner corporation did not have sufficient income of its own for this purpose. In 1937 the secretaries of the National Trotting Association and American Trotting Association died. Their deaths paved the way for the formation of one national association and, in November of *182 1938, at Indianapolis, Ind., a plan known as the "Indianapolis Plan" was devised to merge the American Trotting Association, the United Trotting Association, the National Trotting Association, the petitioner, and the American Trotting Register Association, Inc., into a new association to be formed by January 1, 1939. Under this plan it was agreed that each of the associations would cease their respective duties and official functions by January 1, 1939, and that the records of the several associations would be donated to the new association. It became apparent, at least by November, 1938, at Indianapolis that the petitioner could not hope to be the sole national association and that the American Trotting Register Association, Inc., would have to donate its records without consideration to the new association. The petitioner, on January 11, 1939, voted its stock in approval of the adoption of the Indianapolis Plan by the American Trotting Register Association, Inc., and authorized the officers of the American Trotting Register Association, Inc., to transfer all of the latter's records, including breeding and racing records, to the new association, the United States Trotting Association, *183 without consideration. At December 31, 1938, petitioner's books of account indicated a debit balance in its account with American Trotting Register Association, Inc., of $37,955.49. The sum of $20,425.02 was credited by petitioner against the aforesaid debit balance of $37,955.49 and charged to "Accounts Payable - Special Fund" on petitioner's books. On January 16, 1939, the petitioner took over the office furniture and fixtures of American Trotting Register Association, Inc., and credited said Association with $2,174.85, and the sum of $1 for the breeding and racing records transferred to the United States Trotting Association. During the year 1939, the petitioner paid trade creditors of American Trotting Register Association, Inc., $1,652.38 and received $231.28 for the account of said Register Association, which amounts were respectively charged and credited to the account of said Association. During the calendar year 1939, petitioner charged off the balance of $16,775.72 remaining in the Accounts Receivable of American Trotting Register Association, Inc., as a bad debt. The breeding and racing records transferred to the United States Trotting Association had cost a great *184 deal of money to build up and were of substantial value. The petitioner received no interest by way of stock or otherwise in the United States Trotting Association. The formation of one national association, the United States Trotting Association, was the attainment of the objective sought by the petitioner for many years. E. R. Harriman, petitioner's principal stockholder, had carried a heavy load of responsibility, both official and financial, in attaining this objective. The debt owed to the petitioner by American Trotting Register Association, Inc., in the amount of $16,775.72 became worthless prior to 1939. The stock of American Trotting Register Association, Inc., was worthless prior to 1939. Opinion The first question presented is whether the debt owned to the petitioner by American Trotting Register Association, Inc., became worthless in the year 1939. The petitioner contends that it did by reason of the fact that it was in that year that the petitioner's stockholders agreed to donate substantially all of the assets of the Association to United States Trotting Association, which was to receive like donations from other trotting horse associations and operate as *185 a national organization for the promoting of harness horse racing. The petitioner contends that up to January 11, 1939, when the stockholders of the petitioner voted to make such donation, it had an expectation of recouping its advances to the association out of the revenues of the association. Charles E. Koons, the assistant treasurer of the petitioner, testified that the advances made to the association were with that expectation. We think, however, that the entire record belies this statement. The petitioner did not from its own funds have money to make all of these advances. The necessary funds were contributed by the petitioner's stockholders and other individuals interested in promoting trotting horse races. The Association operated at large losses during most of the years from the date of its organization to the date of its dissolution in 1939. Its books of account at December 31, 1938, showed a deficit of $89,245.87. We do not think that the advances made by the petitioner to the Association in years subsequent to 1931 were made with any expectation that they would ever be repaid. It should be noted that we are not dealing here with the question as to whether the indebtedness *186 of the Association to the petitioner was ascertained to be worthless and charged off in 1939. By an amendment made to the income tax law by the Revenue Act of 1942 bad debts are deductible from gross income in the year in which they become worthless. Section 23(k)(1), Internal Revenue Code. We sustain the respondent's contention that the debt of the Association to the petitioner became worthless prior to 1939. We are also of the opinion, for a like reason, that the shares of stock of the Association owned by the petitioner were worthless long prior to 1939. There is no evidence whatever that they had any market value for many years prior to 1939. Decision will be entered for the respondent.